**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>DEMETRIOUS RICH | No. 23-cr-461-GLR |

## **MEMORANDUM**

Defendant Demetrious Rich, age 19, has been charged with possession of a pistol equipped with a conversion device. He has no criminal record other than ███████████ ████████████████████████████████████████████████████████████████. The firearm at issue was recovered during a search of the basement of a home where Mr. Rich was periodically staying, along with others. The basis for the government's charge is that Mr. Rich having attached a conversion device to a Glock pistol rendered the gun fully automatic in violation of 18 U.S.C. § 922(o).

The indictment was returned in December 2023, and a detention hearing was held on February 9, 2024. The government sought detention on grounds that Mr. Rich would pose a risk of danger to the community. As discussed below, the Court granted that motion, and ordered Mr. Rich detained. Mr. Rich later moved to reopen the detention hearing, a motion the Court granted, and a further detention hearing was held on August 28, 2024. At the continued hearing, the Court concluded that the government has not shown, by clear and convincing evidence, that 24/7 lockdown at the home of his aunt serving as third-party custodian, with location monitoring, barred from possession of any firearm or controlled substance, and with access to the internet only if monitored by Pretrial Services, would not "reasonably assure" community safety. The

reasons for that conclusion were set forth on the record at the hearing, but the Court further memorializes those reasons herein.

## LEGAL STANDARD FOR PRETRIAL DETENTION

The Bail Reform Act governs the release or detention of a defendant pending trial in federal court. 18 U.S.C. § 3142. In every case where the government seeks for a person to be detained while awaiting trial—to detain a person who, by definition, is presumed innocent of the charges—the government bears the burden of demonstrating that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1), (f). "Reasonably assure" does not mean "guarantee"; it means an "objectively reasonable assurance of community safety and the defendant's appearance at trial." *United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985). And where the government seeks to make such a showing based on a claim of danger to the community, it must prove any facts in support of such a requested finding "by clear and convincing evidence." 18 U.S.C. § 3142(f)(2).

As the Supreme Court has made clear, "[i]n our society liberty is the norm, and detention prior to trial . . . is"—or at least as directed by the Supreme Court and Congress is supposed to be—"the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). And the Bail Reform Act requires that a court impose the "*least restrictive* . . . condition, or combination of conditions" that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B) (emphasis added). *See also United States v. Kelley*, No. 23-CR-0327-JRR, 2023 WL 8090632, at *2-*4 (D. Md. Nov. 21, 2023) (describing the legislative history of the Bail Reform Act, including the

heightened protections where, as here, the government seeks pretrial detention on grounds of prospective dangerousness).

Finally, it is important to be precise about *which* "condition or combination of conditions" the government must prove are inadequate to "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). "The structure of the statute mandates every form of release be considered before detention may be imposed." *Orta*, 760 F.2d at 892. Here, the defense came forward with a proposed release plan: a proposal that Mr. Rich be transferred from detention to home confinement ("24-hour-a-day lock-down at [his aunt's] residence except for medical necessities, attorney visits, court appearances, or other activities specifically approved by the court"), subject to location monitoring technology as directed by the pretrial services or supervising officer, under the supervision of a third party custodian (his aunt, who stays home to care for a daughter with special needs); under close supervision by U.S. Pretrial Services; prohibited from possessing firearms or controlled substances; prohibited from any contact, direct or indirect, with any victims or witness; and with stringent restrictions on access to internet-enabled devices. *See* ECF No. 27 at 13.

Thus, the question presented at both the original detention hearing in February, and the continued detention hearing this week, was whether the government was able to prove, by clear and convincing evidence, that even that litany of restrictive conditions would not "reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f).

## DISCUSSION

As noted above, following the February 2024 detention hearing, the Court entered an order of detention pending trial. ECF No. 15. At that hearing, the government pointed out,

correctly, that Mr. Rich is charged with possession, on May 30, 2023, of an unregistered, highly dangerous weapon. *See* ECF No. 1 (indictment). The government explained that the firearm at issue, along with another weapon that was seized that day, were found under a sofa in a room that was used as a bedroom and that also contained some of Mr. Rich's possessions. But the government did not principally seek a finding of prospective dangerousness based on the possession of the firearm and conversion device. Rather, its principal contention was that Mr. Rich's prospective dangerousness was proven, by clear and convincing evidence, based on his alleged connection to several *other* crimes. These were crimes that Mr. Rich was not charged with. And they are crimes that today, over six months later, Mr. Rich has still never been charged with; indeed, two *other* individuals have been charged with two of those crimes.

One of those alleged uncharged crimes related to what the government, at the February hearing, described as a "shootout" in a hotel lobby. Government counsel represented in February that not only was Mr. Rich present at the time of the shooting, but *was a shooter himself*. After the government described the incident as Mr. Rich having been "engaged in a shootout in a downtown hotel," the Court inquired to clarify what the government meant by "engaged," asking whether the government had reason to believe that Mr. Rich was "discharging weapons in the hotel." Government counsel responded, "Yes, your Honor. Yes." For obvious reasons, that was significant information bearing on whether Mr. Rich might pose a danger to the community if released, even to home confinement. Given that the detention hearing occurred not long after Mr. Rich was indicted, and without the defense having received discovery or otherwise being in a position to contest the government's factual proffer, the Court relied on that proffer, as is typical in detention hearings. The government's representation presumably was based on some representation that someone, presumably law enforcement, had made to counsel. It turns out,

however, that that representation was wrong. The government now concedes that Mr. Rich not only did not discharge any weapon that day, but *was not even armed*. Instead the government concedes that an unidentified person (not Mr. Rich) stepped out of an elevator and started shooting at people in a hotel lobby, where Mr. Rich and others were standing.[1]

At the February hearing, the government also represented that Mr. Rich had been "captured on surveillance videos in carjacked vehicles, driving or as a passenger after they were taken, after they were carjacked," and shortly thereafter reiterated, "I do know there is this surveillance footage of Mr. Rich, in carjacked vehicles." Mr. Rich has now stated the following:

> The Government turned over surveillance footage of Demetrious exiting the back passenger seat of a black four-door sedan on December 13, 2022, claiming that vehicle was carjacked. However, the Government has not produced any police reports indicating that car was, in fact, a carjacked vehicle. Indeed, the only "evidence" that mentions Demetrious' connection to a carjacked vehicle (the Baltimore County search warrant, which hardly counts as airtight evidence) states the vehicle was an Acura MDX, which is an SUV – clearly a different car than the sedan seen in the video – and was recovered with paperwork belonging to another person in it on October 18, 2022, two months before this surveillance footage was recorded. Demetrious proffers to this Court that the December 2022 surveillance footage simply shows him as a passenger in a car that his friend lawfully purchased from a dealership for $12,000.

ECF No. 27 at 11. In other words, it appears there is no "surveillance footage of Mr. Rich, in carjacked vehicles"; if there is any, it has not been produced to the defense, and has not been

---

[1] The government's production in discovery of the video footage of that shooting, rendering the government's prior proffer untrue, particularly as to information as significant as the alleged "shootout," clearly constitutes "information . . . that was not known to the [defense] at the time of the [prior] hearing" and that had a "material bearing" on this Court's prior detention decision. *See* 18 U.S.C. § 3142(f)(2). This is one reason, among others noted below, that Mr. Rich was entitled to a hearing on his motion for reconsideration of the Court's February 2024 detention order. The existence of such new information does not necessarily entitle Mr. Rich to release; that question is separate, and is governed by the other provisions of the Bail Reform Act. But it does satisfy the threshold question of whether the Court was authorized to hold a supplemental detention hearing.

presented to the Court. At minimum, the fact that the surveillance footage that does exist shows something different than what the government previously described further supports Defendant's motion to reopen the hearing. *See* 18 U.S.C. § 3142(f)(2). It also highlights the Court's concern about the factual proffers made by the government at the prior hearing, and further confirms that none of the evidence of uncharged conduct comes close to constituting clear and convincing evidence as required by the Bail Reform Act.

At the prior hearing, the government also proffered that Mr. Rich was "present" at the scene of a nonfatal shooting in November 2022, and that that shooting was connected, through ballistics evidence, to another shooting in October 2022. But not only has Mr. Rich not been charged with any role in those offenses; two *other* individuals have been charged with those crimes—and one was convicted last month (and the disposition of the other is under seal, as the person charged is a juvenile).[2]

Finally, recognizing that possession of a firearm alone does not necessarily constitute clear and convincing evidence of danger to the community, in a written submission in advance of the February 2024 hearing, the government represented that the firearms recovered on May 30, 2023 "had been used in a homicide in Baltimore City" nine weeks earlier. ECF No. 12 at 2. The government reiterated that representation at the hearing, in even starker terms: "*We know* that these [firearms] were used to murder someone" (emphasis added). Part of the basis for Mr. Rich's motion to reopen the detention hearing was that discovery has now revealed the basis for that factual proffer: a preliminary "notification memo" from the National Integrated Ballistic Information Network (NIBIN). Although the parties have not filed the NIBIN memorandum at

---

[2] Given the government's reliance at the February 2024 hearing on these other incidents, these recent developments also constitute new information justifying a reopening of the hearing. *See* n.1, *supra.*

6

issue, it appears this refers to a report from NIBIN stating the following: "This NIBIN investigative lead was developed through a correlation review of your ballistic evidence and has not yet been confirmed by microscopic comparison. Microscopic comparison by a firearm examiner is needed to confirm this association. However, the potential that the same firearm was involved in the linked events is significant enough that investigative follow-up is warranted. This should only be considered a lead and is not intended to establish probable cause for an arrest" (emphasis in original).[3]

As noted above, where the government seeks detention based on prospective dangerousness, it must prove any facts it wishes the court to rely on by clear and convincing evidence. 18 U.S.C. § 3142(f)(2). Just as the government, at the original hearing, relied heavily on the (now abandoned) contention that Mr. Rich discharged a firearm in a hotel lobby, the other information it relied upon most heavily, via proffer, was that the firearms found in the basement apartment had been used in a shooting—though the government has not contended that Mr. Rich was involved in the shooting and does not dispute that many firearms change hands frequently. The government may eventually be able to prove that the firearms at issue were in fact used in prior crimes. But a NIBIN report not only states it is only a "lead" that has "not yet been confirmed by microscopic comparison," but even itself states that it should not even be considered reliable enough to "establish probable cause for an arrest." Evidentiary value less than probable cause obviously does not rise to the level of clear and convincing evidence, as the Bail Reform Act requires. And here, the firearms recovered from the basement apartment at issue were seized in May 2023—nearly fifteen months ago. The government has not stated it has taken

---

[3] *See* Sample NIBIN Lead Packet*, available at* https://crimegunintelcenters.org/nibin-lead-hit-assignment-and-investigation.

the next step referenced in the NIBIN lead, "confirm[ation] by microscopic comparison," and yet still relies only on the NIBIN "lead" in support of detention on dangerousness grounds. The government suggests that the NIBIN report is sufficient for detention purposes, and that a higher evidentiary showing should not be needed before trial. But it is the Bail Reform Act itself that demands that any evidence the government seeks to rely on for an order of detention based on prospective dangerousness be shown by clear and convincing evidence.

In many cases the government can satisfy that standard—and sometimes, perhaps often, a proffer is sufficient. *See, e.g.*, *United States v. Hammond*, 44 F. Supp. 2d 743, 746 (D. Md. 1999) ("When the government is able to proffer evidence that reflects ample and substantial corroboration for its contention that a defendant has committed an offense and is dangerous or a flight risk, efficiency and the need to conserve scarce judicial resources justify accepting that proffer in lieu of live testimony; and such proffers that are reflective of weighty and broad evidence of guilt, when considered with other information such as criminal history and lack of ties to the community, can be entirely proper bases for orders of detention."). But the Bail Reform Act means what it says: any facts the government believes should be relied upon for detention based on dangerousness must be proven by clear and convincing evidence. And that was not a throw-away standard. It was a crux of the legislative compromise that resulted in Congress authorizing in the Bail Reform Act, for the first time, pretrial detention on grounds other than flight risk. *See Salerno*, 481 U.S. at 750-51; Hon. Donald P. Lay & Jill De La Hunt, *The Bail Reform Act of 1984: A Discussion*, 11 William Mitchell L. Rev. 929, 936-37, 952 (1985).

The bottom line, as applied here, is that the miscellaneous uncharged conduct that the government relied on so heavily (via proffer) at the prior detention hearing comes nowhere close to constituting clear and convincing evidence of Mr. Rich's alleged dangerousness.

Thus, perhaps it is unsurprising that this time the government has taken a different course. In its opposition to Mr. Rich's motion, ECF No. 24, the government now relies almost entirely on Mr. Rich's possession of the pistol and conversion device to attempt to satisfy its burden to prove, by clear and convincing evidence, that while under 24/7 lockdown, under location monitoring, under the watchful eye of his aunt, and with restricted access to the internet, etc., the safety of the community would not be reasonably assured. To make that determination, in turn, the Court must consider the totality of the circumstances, including the nature and circumstances of the offense charged, the weight of the evidence, Mr. Rich's history and characteristics, and the nature and seriousness of the danger that would be posed by release. 18 U.S.C. § 3142(g).

Mr. Rich has a very limited criminal history, and has never been charged with a violent offense, or any drug-related offense. He is young, having been a few months into age 19 at the time of the alleged offense. He has lived in Baltimore his entire life. Based on the social media and text messages the government has submitted, ECF Nos. 24-2, 24-3, he appears to have allowed himself to be drawn into a destructive cycle of being involved in, or at least purporting to be involved in, the sale and/or possession of highly dangerous firearms. And there is at least some evidence to connect Mr. Rich to the firearms seized in May 2023. The Court considers all of that, and the other evidence presented, as relevant to the nature and circumstances of the offense charged and the weight of the evidence. But as noted above, the more central question presented for detention purposes is Mr. Rich's future dangerousness while subject to 24/7

lockdown pursuant to home confinement. As explained at the hearing, the Court finds that the government has not shown, by clear and convincing evidence, that Mr. Rich will pose sufficient danger that community safety could not be reasonably assured by home confinement.

That is particularly so because the defense has come forward with a robust proposal for such home confinement, including a third-party custodian, electronic location monitoring, and restriction of access to internet-enabled devices. The defense proposed that Mr. Rich be transferred to home confinement either with his mother or his aunt. His mother, Shannon Castro, works at a nursing home. She was prepared to serve as a third-party custodian to Mr. Rich, and Mr. Rich's aunt, Christina Joseph, age 33, was prepared to do so as well. Ms. Joseph has previously worked at a nursing home, but presently does not work outside the home, but instead stays home to care for a minor daughter with special needs; her residence is not public housing, and there are no firearms located at her residence. And as for restricting access to the internet to reasonably assure that Mr. Rich will not engage in conduct similar to that reflected in the government's submission, the Court has prohibited Mr. Rich from using any internet-capable device without prior written approval of Pretrial Services, and requires that any device Mr. Rich wishes to use to access the internet be monitored through software installed by Pretrial Services' Computer & Internet Monitoring Program.

## CONCLUSION

For these reasons, and the others stated at the August 28, 2024 detention hearing, the government has not shown, and certainly not by clear and convincing evidence, that the combination of conditions set forth in the Court's Order Setting Conditions of Release are

inadequate to provide reasonable assurance of community safety and that Mr. Rich will appear as

required.[4]


Date: August 30, 2024                                    _____/s/_____

                                                        Adam B. Abelson
                                                        United States Magistrate Judge

---

[4] As set forth by separate order, the government has given notice of an intent to appeal this
determination to the District Court. ECF Nos. 32 & 34. The home confinement order thus has
been stayed. ECF Nos. 34 & 35.

11